[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
After a full trial, all parties present and represented by counsel, the court, by a preponderance of the credible, relevant and legally admissible evidence, finds the facts, determines, concludes and orders as follows.
The plaintiff, Phyllis J. Mikulski, by writ, summons and complaint, dated October 4, 1991, seeks a dissolution of her marriage to the defendant, Victor F. Mikulski.
The plaintiff, whose maiden name was Phyllis J. Wagner, and the defendant were married to each other on June 21, 1980 in Higganum, Conn. Both parties have resided continuously within this state since the date or the marriage. No minor children have been born issue of the marriage and no other children have been born to the parties. No state or municipal agency is assisting either party to this action.
The plaintiff is presently employed as an industrial hygienist with the United States Department of Labor/OSHA, and presently is paid approximately $38,000 per annum. The defendant is a supervisor at Pratt Whitney and earns approximately $52,000 per year.
The evidence offered at trial indicates that the marriage was never idyllic and eventually, because of the differing goals and expectations of the parties, the CT Page 10905 marriage floundered and is now unsustainable.
The parties separated in the summer of 1981, at which time the plaintiff moved to Enfield, Conn. where she became employed as a bookkeeper for a restaurant operation.
The parties reconciled after about a year when the plaintiff moved back into the marital home where she remained and continued her education. The defendant supported the plaintiff during her attendance at college. From 1983 to her graduation the plaintiff devoted her time to her studies and graduated from Central Connecticut in 1990 after attaining a 3.9 grade point average. She graduated fourth out of a class of 700.
The defendant during this period advanced at his place of employment to supervisor and has attained a salary of $52,000 per year.
After graduation, the plaintiff became employed with the federal department of labor and now makes approximately $38,000 per year.
At her employment, the plaintiff became acquainted with a fellow worker. On or about September in 1991 the parties again separated and in a short time thereafter, around October of 1991, the plaintiff moved in and became intimate with the aforesaid fellow employee. At that time the plaintiff's housemate was married to another and had three children.
For about four weeks around January of 1992, the plaintiff moved back into the marital home. But the last reconciliation was short-lived and after four weeks the plaintiff moved out of the marital home and resumed her co-habitation with her fellow employee.
In early 1982, the plaintiff, appearing pro se, filed a divorce action against the defendant. This action was never pursued and subsequently was dismissed.
Each time the plaintiff left the defendant, she did so without apparent notice to the defendant. When the defendant came home the plaintiff was gone. CT Page 10906
It is difficult to establish absolute fault for the demise of a marriage when the parties are as mis-matched as they appear here. The defendant obviously expected a "traditional" marriage with children and a spouse content to assume the role as housewife and mother. He seemed to be interested in restoring classic cars, movies, occasional dining out and outings with his friends who shared his interest in cars and trading auto parts for such classic cars. The defendant also controlled all the financing in the home, paid the bills and managed all the bank accounts and only put the plaintiff's name one one joint account. The defendant, the court assumes, because he worked hard for his money was frugal and carefully managed same.
The defendant did however pay the plaintiff's car loan upon their reconciliation after their first separation. Such payment totalled about $10,800. He also paid approximately $8,000 towards the plaintiff's college tuitions over the years she attended college. During her college years, the plaintiff did not work outside the home as constantly as she did before, but, as during the entire course of the marriage, she did the cooking, washing and housekeeping and was expected to do so by the defendant.
The parties lived in the marital home, which was purchased by the defendant in 1978, which was prior to the marriage.
At the time of the marriage, the home was encumbered by mortgage which was paid off shortly thereafter.
Since the marriage, the defendant, through his employer, Pratt Whitney, has accumulated funds in two employee savings plans. The first is an hourly plan which the defendant joined on July 1, 1981 and which on November 10, 1992 contained $12,852.39. The defendant joined his second employee savings plan on January 27, 1986 and up to November 10, 1992 has accumulated in said plan the sum of $73,140.53. The marital home which is solely in the name of the defendant is valued at $128,000. The defendant also has accumulated savings bonds with a cash value of approximately $8,500.00. He has at present several small savings accounts and a checking account. His pension benefit with his employer as of November 5, 1992 is valued at $42,356. The defendant also owns an insurance policy with a cash value of CT Page 10907 approximately $72,000.00.
At the time of the parties last separation, the plaintiff withdrew approximately $6,000 from the parties' only joint bank account.
The plaintiff in addition to her salary of approximately $38,000 a year has a thrift savings account of approximately $7,000 and a retirement benefit of approximately $600.
As previously stated, it is difficult to assign fault under the circumstances of this case. However, the greater fault does lie with the plaintiff. She left and returned to the marriage at a high emotional cost to the defendant. She left the marital home by choice and with little or no notice to the defendant. She returned by choice and was accepted back by the defendant, who hoped the marriage would work. Unfortunately for him, his hopes were dashed and the marriage has failed.
However, the court recognizes the non-monetary contribution of the plaintiff to the marriage. Early in the marriage she worked full time during which time the mortgage on the residence was paid off. All during the marriage, while working outside the home or not, she did the cooking cleaning and other task required in maintaining a household and continued to perform these tasks during her attendance at college.
Based on the facts and circumstances in this case and guided by the criteria enunciated in General Statutes Sec. 46b-81 and 46b-82 the court concludes and orders as follows:
The marriage of the parties has broken down irretrievably.
There is no alimony awarded to either party. The orders herein are deemed by the court to be property settlement and therefore not subject to post judgment modification.
The defendant is to pay to the plaintiff, not as alimony but as in furtherance of a property distribution CT Page 10908 the sum of $50,000 within 120 days of this decree. The plaintiff shall receive one half of the income tax refund now outstanding.
The parties shall be responsible for their own debts as shown on their financial affidavit.
The defendant shall have as his own, free and clear from any claims of the plaintiff: the marital home at 12 Nedobitz Road, Higganum, Conn.; his retirement plan; his wage and salary United Technology savings accounts, his life insurance policy; his savings bonds; any other savings or checking accounts standing in his name; and, one half of the outstanding income tax refund check.
Each party shall be responsible for their own counsel fees.
Accordingly, a decree may enter dissolving the marriage and incorporating therein the aforesaid orders of the court.
SPALLONE STATE TRIAL REFEREE